286 S.E.2d 682 (1981)
Laverne HIGGINS
v.
BOARD OF EDUCATION, RANDOLPH COUNTY, et al.
No. 15201.
Supreme Court of Appeals of West Virginia.
December 11, 1981.
Dissenting Opinion January 27, 1982.
Richard E. Shepherd, Elkins, for appellant.
*683 Brown, Harner & Busch and W. Del Roy Harner, Elkins, for appellees.
NEELY, Justice:
In this case we are asked to illuminate the applicability of State Board of Education Policy 5300 to the selection of personnel for voluntary transfer and promotion. We find that by clear and unambiguous wording, policy 5300[1] applies to voluntary transfers and promotion; however, policy 5300 does not imply that the evaluation of applicants for promotion must be made on an entirely mechanical basis. Informed subjective judgment on the part of the appointing authorities is still a relevant criterion.
This is an appeal from an action for declaratory judgment in the Circuit Court of Randolph County where the appellant asserted that she was denied a position as a high school English teacher at Elkins High School while a less qualified applicant was awarded the position. The circuit court held that the County Board of Education had acted properly under its policies, rules, and regulations and that there was no evidence of arbitrary or capricious conduct. We affirm.
Sometime in March, 1980, appellant learned of the possibility that an incentive position for a teacher would be created at Elkins High School, and, based on this possibility appellant applied for the position. In mid-April, 1980 a notice was distributed to the Randolph County schools advising of several new or additional teaching positions, including the one for which the appellant had applied. After the publication of the notice, the appellant was interviewed by administrative personnel in the superintendent's office and in May, 1980 appellant learned that the position had been awarded to another applicant who had fewer years of teaching experience and, unlike appellant, did not possess a master's degree.
Appellant filed a grievance to obtain an explanation of why she had been denied the position. After proceeding through levels I, II, and III, a level IV grievance hearing was held by the Randolph County Board of Education on 1 July 1980. On 15 July 1980 the President of the Board of Education rendered a written decision based upon the earlier hearing in which he stated, inter alia that "all applicants were interviewed and many factors were taken into consideration;" the successful applicant "was the one recommended and subsequently approved;" and, in his opinion, "neither State Policy 5300 nor Randolph County Policy EBD was violated" by the placement of a person whom appellant argued was less trained and less experienced in the new position.

I
The record indicates that the principal at Elkins High School was looking for a teacher who could both teach English and sponsor the high school cheerleading squad. The successful applicant, Barbara Zimmerman, had experience in both of these areas on the high school level. Ms. Zimmerman had also served as yearbook sponsor at Tygarts Valley High School. The record indicates that at the interview Ms. Zimmerman appeared to be more enthusiastic and was evaluated as having a better personality for high school work. The appellees argue that notwithstanding the appellant's superior academic credentials and greater years of experience, the personal qualities and specific high school experience of Ms. Zimmerman made her the better qualified applicant to fit the particular requirements of the Elkins High School position.
The record in this case is replete with the respective evaluations of the appellant and Ms. Zimmerman for the years 1978 thru 1980. A recapitulation of these evaluations is as follows:

*684 EXHIBIT C

 RECAP OF ZIMMERMAN AND HIGGINS EVALUATIONS FOR YEARS 1978-1980
 1980 1979 1978 3 Yr. Total
 Principal's Rating
 Only
 Zim. Hig. Zim. Hig. Zim. Hig. Zim. Hig.
 Prin. Off. Prin. Off. Prin. Off. Prin. Off. Prin. Off. Prin. Off.
 1. Knowledge in subject 2 2 1 N/R 2.5 2 2 N/R 2 2 2 N/R 6.5 5
 2. Organization 2 2 1 N/R 2.5 2 2 N/R 2 2 3 N/R 6.5 6
 3. Ability to communicate 2 2 1 N/R 2.5 2 2 N/R 2 2 2 N/R 6.5 5
 4. Knowledge re: learner 3 3 2 N/R 2.5 2 2 N/R 3 2 3 N/R 8.5 7
 5. Instructional methods 2 2 1 N/R 2.5 2 2 N/R 3 2 2 N/R 7.5 5
 6. Class management 2 3 2 N/R 2.0 2 2 N/R 3 2 2 N/R 7 6
 7. Evaluation of student 3 N/R 1 N/R 2.5 2 2 N/R 3 3 3 N/R 8.5 6
 8. Teach./Stud./Parent Rel. 3 3 1 N/R 2.5 N/R 2 N/R 3 N/R 2 N/R 8.5 5
 9. Prof. Responsibilities 2 3 1 N/R 2.5 2 1 N/R 3 2 2 N/R 7.5 4
10. Personal qualities 2 2 1 N/R 2.0 2 1 N/R 2 2 2 N/R 6 4
 _______________________________________________________________________________________________________________
 23 22 12 24 18 18 26 19 23 73 53
NOTE: THE HIGHER THE NUMBERS, THE POORER THE EVALUATION.
 PERFECT SCORE IN ANY ONE YEAR IS 10, WORST POSSIBLE
 SCORE IN ANY ONE YEAR IS 50.
N/R = Not Rated

It is apparent from these evaluations that both teachers are performing quite well and that neither of them has any mark below "good" on a scale which has five numbers where the lowest one is superior and the highest is unsatisfactory. It can be observed that in the recapitulation chart Ms. Zimmerman's principal in 1979 used decimal scoring while Ms. Higgins principal marked exclusively in whole numbers.
*685 The central fallacy of the appellant's argument is her conclusion that quantizing the subjective evaluations of rating officers converts those evaluations from subjective judgments to objective judgments. It is agreed that the same person did not rate both the appellant and Ms. Zimmerman and, consequently, with the scores being as close as they are, it is not possible for a court to infer from the scores alone that the appellant is the superior teacher. A look at the recapitulation could as easily lead a reasonable person to conclude that Ms. Zimmerman was rated by a person with higher expectations than the appellant's raters. If the evaluations had shown that Ms. Zimmerman was consistently performing in an unsatisfactory manner while the appellant was performing at the level of either excellent or superior, then the disparity might be sufficiently palpable to warrant the inference that appellant is the superior teacher. Furthermore, the same inference might also be warranted if both teachers had been rated by the same rating officer while both were performing exactly comparable jobs.
The record indicates that none of these conditions justifying a mechanical comparison was met. The appellant was teaching junior high school English while Ms. Zimmerman was teaching high school English. Each teacher was rated by her own principal and the purpose of the ratings was not for comparison with other teachers but to improve performance by the individual being rated with regard to her current work.

II
Nonetheless, there is the further objection that the appellant had a master's degree in education while Ms. Zimmerman had only a bachelor's degree in English. While the possession of a master's degree is one factor to be considered in determining teacher competence, it is not the only factor. The appellant did not have a master's degree in English, nor had she any experience in teaching high school English. On the other hand Ms. Zimmerman had experience teaching high school English and at the interview appeared to have more enthusiasm for leading extracurricular activities than the appellant.
There is not even a hint in this record that the job was awarded to Ms. Zimmerman from improper motives of influence or favoritism. Quite to the contrary, the record indicates that the objective ratings of the two teachers were taken into consideration and that an extensive personal interview was conducted to find a person with both the academic background necessary to teach the high school subject matter and a personality which would match the extracurricular needs of the new job.
While we agree with the appellant that State Board of Education Policy 5300 is applicable in its broadest sense to voluntary transfers, and that a rational procedure for selecting qualified candidates must be employed, we do not find that Policy 5300 is intended to make all personnel promotions dependent upon either seniority, quantized rating sheets, or degree levels. Normal human experience indicates that there are qualities which cannot be quantized such as élan, enthusiasm, leadership, and talent which can be evaluated only through personal interaction with an applicant and ultimately a subjective judgment about his or her potential to do a new job.
Consequently, we hold that the courts of this State will not intrude themselves into decisions concerning voluntary transfer and promotion under Board Policy 5300 unless there is evidence of such an arbitrary abuse of discretion on the part of the appointing authorities as to lead the court to believe that the purpose of Policy 5300, namely rational merit promotion, has been confounded. In this regard we find that the primary purpose of Policy 5300 is to prevent discriminatory or retaliatory transfers or demotions which would cause bad morale, insecurity, and poor performance on the part of school employees.
Accordingly, for the reasons set forth above the judgment of the Circuit Court of Randolph County is affirmed.
Affirmed.
*686 McHUGH, Justice, dissenting:
As I read the majority opinion, I conclude that the majority holds that West Virginia Board of Education Policy 5300 is applicable to voluntary transfers for promotion. However, under the circumstances of this case there was no "evidence of corruption in the process or such an arbitrary abuse of discretion" on the part of the Randolph County Board of Education so as to lead this Court "to believe that the purpose of Policy 5300, namely rational merit promotion, has been utterly confounded."
It is my opinion that the result in this case does indeed "utterly confound" the purpose of Policy 5300 and that rational merit promotion has been discarded.
A reading of this opinion must give chills to those dedicated teachers who constantly strive to improve their academic knowledge and their classroom performance, yet find that because they are lacking a "proper personality for high school work" and, most importantly, do not possess "sufficient enthusiasm," they are destined to fail in the public school system.
In order to arrive at the result of the majority the writer minimizes the evaluations of the two applicants for the position. He incredibly concludes that a "look at the recapitulation could as easily lead a reasonable person to conclude that Ms. Zimmerman was rated by a person with higher expectations than the appellant's raters." This bootstrap argument does little to justify the result other than illustrate the extreme to which the majority writer had to stretch to reach that result.
After the appellant's superior evaluation was cavalierly tossed aside, the majority writer noted that the successful applicant "appeared to have more enthusiasm for leading extracurricular activities than the appellant."
In addition to being the recipient of outstanding evaluations which improved annually, the appellant had more years of experience and superior academic credentials than the successful applicant. She lacked only "enthusiasm" and "personality."
It is not my intention to cast unfavorable light on Ms. Zimmerman. Rather, I am deeply concerned about any system of transfer of teachers which gives such unrestricted latitude to the appointing authorities. She too may be caught in that web in the future.
I fear that this opinion will significantly undermine Policy 5300 which is exactly what I believe the majority writer intends.
I am authorized to state that Justice McGRAW joins me in this dissent.
NOTES
[1] Policy statement 5300 of the West Virginia Board of Education provides in part: "Every employee is entitled to know how well he is performing his job, and should be offered the opportunity of open and honest evaluation of his performance on a regular basis. Any decision concerning promotion, demotion, transfer or termination of employment should be based upon such evaluation, and not upon fact as extraneous thereto."