351 S.E.2d 58

**Patsy DILLON**

v.

**BOARD OF EDUCATION OF the COUNTY OF WYOMING, etc.**

No. 16830.

Supreme Court of Appeals of West Virginia.

Nov. 20, 1986.

Allan N. Karlin, Morgantown, for appellant.

Harlen R. Tiller, Asst. Pros. Atty., Pineville, for appellee.

MILLER, Chief Justice:

This is an appeal from a final order of the Circuit Court of Wyoming County, entered September 12, 1985, which denied the petition of the appellant, Patsy Dillon, for a writ of mandamus to compel the Wyoming County Board of Education to employ her as a language arts teacher at Mullens Middle School. The appellant contends that the circuit court erred in concluding that the Board's decision was not arbitrary, capricious, or an abuse of discretion. We agree, and we reverse the judgment of the circuit court.

The facts giving rise to this dispute are essentially uncontroverted. On August 23, 1984, Frank L. Blackwell, Superintendent of the Wyoming County Schools, posted a notice of a vacancy in the position of language arts teacher at Mullens Middle School. The notice specified that to be eligible for the position, applicants were required to possess a valid West Virginia teaching certificate in the language arts area.

On August 29, 1984, the appellant applied for the vacant position. The appellant is a certified teacher with specializations in English and social studies, grades one through nine, and in elementary education, grades one through eight. She has been teaching in the Wyoming County school system since 1969.

On August 30, 1984, Superintendent Blackwell telephoned the appellant and notified her that he intended to recommend that the Board of Education hire his sister-in-law, Tammy McKinney, to fill the position. Ms. McKinney is a certified teacher with specializations in English, grades seven through twelve, and as a school librarian, grades kindergarten through twelve. She had taught school in Wyoming County from 1977 to 1979, but had subsequently moved away and had only returned to the county seeking employment in the summer of 1984. Superintendent Blackwell told the appellant over the telephone that he was recommending Ms. McKinney because she had a masters degree and was, therefore, more qualified than the appellant.

On September 10, 1984, the Board of Education approved, without discussion, the superintendent's recommendation of Ms. McKinney for the teaching position at Mullens Middle School. The appellant subsequently filed a formal grievance with the Board, alleging that she had been denied a teaching position within her field and seeking to be assigned to the position filled by Ms. McKinney or to a similar position at another school. Attempts to settle the grievance were unsuccessful, and a hearing was conducted before the Board on January 7, 1985.

The evidence at the hearing before the Board reveals that Ms. McKinney has a masters degree in instructional science,[1]

1. The circuit court found that Ms. McKinney has a masters degree in language arts. This

while the appellant has a bachelor's degree plus fifteen hours of graduate work. The evidence also shows that the appellant's graduate work was all in the language arts field, while only nine of Ms. McKinney's graduate hours related to that field. Neither applicant had taught language arts nor a related subject on a regular basis for the five years immediately preceding the posting of the vacancy at Mullens Middle School.[2]

The evidence, however, shows that, prior to that five-year period, the appellant had taught language arts in the Wyoming County schools for approximately eight years. Ms. McKinney, who had seven years of teaching experience prior to 1979, had taught language arts in Wyoming and Fayette County junior high and high schools for approximately five years. Both applicants had received favorable evaluations during their teaching careers and had served as cheerleader sponsors and on textbook selection committees. In addition, Ms. McKinney had one year of extracurricular experience as a high school drama coach.

By letter dated January 15, 1985, the Board advised the appellant of its decision to deny her grievance on the ground that Ms. McKinney was better qualified for the teaching position. The appellant then instituted proceedings in the circuit court seeking a writ of mandamus to compel the Board to assign her to the position filled by Ms. McKinney. The circuit court issued a rule to show cause, and a hearing was conducted on April 25, 1985.

At the hearing before the circuit court, Superintendent Blackwell admitted that the appellant was qualified to fill the position at Mullens Middle School. He testified, however, that he had chosen to recommend Ms. McKinney for the position because of her "superior qualifications," which included her masters degree, specialization in library science, experience as a drama coach, and an ability to cooperate with people. Superintendent Blackwell testified that he had interviewed Ms. McKinney earlier in the summer of 1984 when she had first applied for a job with the Board, but admitted that at the time he decided to recommend her for the language arts position he did not know the field in which she had obtained her masters degree. The superintendent also admitted that he was only vaguely aware of the appellant's extracurricular activities and did not know that she had completed more graduate work in the language arts field and had more experience actually teaching that subject than Ms. McKinney. Superintendent Blackwell testified that he did not interview the appellant or seek further information regarding her qualifications for the position prior to making his recommendation.

By order entered September 12, 1985, the circuit court ruled that the conduct of the superintendent and the Board in hiring Ms. McKinney was not arbitrary, capricious, or an abuse of discretion, and that the appellant was therefore not entitled to the relief prayed for. It is from this order, denying her application for a writ of mandamus, that Ms. Dillon now appeals.

The first question presented in this appeal is whether a school board is required to consider seniority in filling vacant teaching positions. W.Va.Code, 18A–4–8b(a) (1983), provides in pertinent part:

"A county board of education shall make decisions affecting promotion and

---

finding is directly contradicted by all of the evidence, including Ms. McKinney's testimony at the hearing before that court:

"Q. We talking a little bit about—You do have a master's degree, is that right?

"A. Yes, sir.

"Q. What is your master's degree in?

"A. It's in instructional science.

"Q. What is instructional science?

"A. It is a program that is designed in the education field to help you evaluate and instruct the individual student."

2. Ms. McKinney left Wyoming County in 1979 and taught only part time as a substitute teacher thereafter. The appellant, though teaching full time in the Wyoming County schools, had been assigned to Herndon Consolidated School as a "floating teacher" without a regular classroom and had been teaching physical education for the most part.

filling of any classroom teacher's position occurring on the basis of qualifications. If the applicant with the most seniority is not selected for the position a written statement of reasons shall be given to the applicant with the most seniority with suggestions for improving the applicant's qualifications."[3]

The appellant asserts that this provision requires the Board to select the most senior applicant to fill any vacancy unless his or her qualifications need improvement. The appellees assert that the plain language of the statute indicates that employment decisions are to be based solely upon the qualifications of the applicants, without regard to seniority.

Although we have not had occasion to consider this provision, it is evident that the statute's emphasis on the qualifications of applicants is in furtherance of the strong public policy favoring the hiring and advancement of teachers based on their abilities. Public education is a fundamental constitutional right in this State, and a prime function of the State government is to develop a high quality educational system, an integral part of which is qualified instructional personnel. *Pauley v. Kelly*, 162 W.Va. 672, 255 S.E.2d 859 (1979). *See also Pauley v. Bailey*, 174 W.Va. 167, 324 S.E.2d 128 (1984). "[T]he State has a legitimate interest in the quality, integrity and efficiency of its public schools in furtherance of which it is not only the responsibility but also the duty of school administrators to screen those [in] ... the teaching profession to see that they meet this standard." *James v. West Virginia Board of Regents*, 322 F.Supp. 217, 229 (S.D.W.Va.), *aff'd*, 448 F.2d 785 (4th Cir.1971). The county boards of education perform these functions on behalf of the State in the hiring and placement of teachers. *Boggs v. Board of Education*, 161 W.Va. 471, 244 S.E.2d 799 (1978), *overruled on other grounds, Ohio Valley Contractors v. Board of Education*, 170 W.Va. 240, 293 S.E.2d 437 (1982).

On the other hand, W.Va.Code, 18A–4–8b(a), expressly requires the school board to give an applicant with seniority who is not hired to fill a vacant position a written statement of the reasons for its decision to hire a teacher with less seniority along with suggestions as to how the more senior applicant can improve his or her qualifications. Prior to 1983, W.Va. Code, 18A–4–8b, entitled "Seniority rights for professional and school service personnel," granted professional personnel seniority rights only with regard to lay-offs and preferential recalls. By the addition of the language in question regarding teacher promotions and vacancies, the legislature must have intended seniority to play some role in the selection process.[4]

We do not believe that this conclusion does offense to the principle that the qualifications of applicants for teaching positions are of paramount importance. Ordinarily, "the term seniority connotes priority or precedence achieved by length of service in a given job." *Crockett v. Andrews*, 153 W.Va. 714, 720, 172 S.E.2d 384, 388 (1970). In the case of the classroom teacher, however, seniority implies more than just a reward for length of service. The performance of the classroom teacher is evaluated regularly, with an eye toward constant improvement of his or her professional skills. Consistently positive evaluations reflect not only professional accomplishment, but indicate invaluable practical knowledge that can be brought to a new position. In this context, seniority itself connotes some element of qualification.

After a careful reading of W.Va.Code, 18A–4–8b (1983), we conclude that the legislature must have intended seniority to be the determinative factor when the appli-

---

**3.** W.Va.Code, 18A–4–8b(a) (1983), has been adopted by the Board and is incorporated in Policy No. 3500 of the Wyoming County Board of Education Employees Handbook.

**4.** This conclusion follows customary rules of statutory construction that we should give some effect to each word of a statute in order to determine its meaning. *See State ex rel. Cohen v. Manchin*, 175 W.Va. 525, 336 S.E.2d 171 (1984); Syllabus Point 6, in part, *State ex rel. Johnson v. Robinson*, 162 W.Va. 579, 582, 251 S.E.2d 505, 508 (1979); *Wooddell v. Dailey*, 160 W.Va. 65, 68, 230 S.E.2d 466, 469 (1976).

cants for a promotion or a vacant teaching position are otherwise so similarly qualified as to make a rational choice among the candidates impossible. Obviously, if the applicant with the most seniority is also the most qualified person for the job, seniority does not truly come into play. By the same token, the statute clearly contemplates that if one candidate for a teaching position is clearly more qualified, the seniority of another applicant will not be sufficient to justify denying the position to the more qualified applicant. However, where several applicants have the same or similar qualifications, there is no rational basis for selecting one applicant over the others except seniority. In such circumstances, the statute, in effect, establishes a presumption that the applicant with the most seniority is more qualified.

We believe that this approach preserves both the rights of West Virginia students to a quality education and the rights of teachers to career continuity and advancement.[5] Accordingly, we hold that under W.Va.Code, 18A–4–8b(a) (1983), decisions of a county board of education affecting teacher promotions and the filling of vacant teaching positions must be based primarily upon the applicants' qualifications for the job, with seniority having a bearing on the selection process when the applicants have otherwise equivalent qualifica-

tions or where the differences in qualification criteria are insufficient to form the basis for an informed and rational decision.

In the present case, the record reveals that the appellant and Ms. McKinney both met the position's certification requirement. Both applicants had experience teaching language arts, had received positive personnel evaluations, and had been involved in extracurricular activities. Ms. McKinney had earned a master's degree in instructional science, of which nine semester hours were in the language arts, while the appellant had fifteen semester hours of graduate studies in language arts. Accordingly, it would appear that the appellant and Ms. McKinney were similarly qualified to fill the vacant language arts teaching position, and that the appellant's seniority was a factor to be considered by the appellees in making their decision.

█ The appellees contend, however, that Ms. McKinney was, in fact, more qualified than the appellant. They rely on the fact that Ms. McKinney possessed a masters degree and had an additional specialization in library science and experience as a drama coach.[6] We think it is apparent, however, that the appellees never considered any factor other than Ms. McKinney's masters degree prior to rendering their decision. The only justification Superintendent Blackwell gave the appellant

5. This follows related cases from other jurisdictions where similar seniority rights are incorporated into statutes governing the employment of teachers or are included in collective bargaining contracts. *See, e.g., Birk v. Board of Education,* 120 Ill.App.3d 181, 75 Ill.Dec. 623, 457 N.E.2d 1065 (1983), *aff'd,* 104 Ill.2d 252, 84 Ill.Dec. 447, 472 N.E.2d 407 (1984); *Saydel Education Ass'n v. Public Employees Relations Board,* 333 N.W.2d 486 (Iowa 1983); *Mahoning County Board v. Mahoning County TMR Education Ass'n,* 22 Ohio St.3d 80, 22 O.B.R. 95, 488 N.E.2d 872 (1986); *Shandy v. Portland School Dist. No. 1,* 54 Or.App. 420, 634 P.2d 1377 (1981); *School District of the City of Duquesne v. Duquesne Education Ass'n,* 25 Pa.Cmwlth. 216, 359 A.2d 850 (1976), *rev'd,* 425 Pa. 279, 380 A.2d 353 (1977); *Burns v. Segerson,* 122 R.I. 123, 404 A.2d 500 (1979); *Hogsed v. Lancaster Area Schools Board of Trustees,* 283 S.C. 42, 320 S.E.2d 724 (1984).

6. We note that these criteria were never mentioned as prerequisites to the vacant position in

the superintendent's position announcement. Webster's Third New International Dictionary defines "qualification" as "a condition precedent that must be complied with (as for the attainment of a privilege)." In this sense, the only "qualification" for the language arts position at Mullens Middle School listed in the position announcement was a valid West Virginia teaching certificate. If there were additional qualifications necessary for the vacant position, they should have been posted in the position announcement. County boards of education have an obligation to establish and announce the criteria for determining whether an applicant is qualified to fill a particular teaching position. *See Martin v. Kentfield School Dist.,* 134 Cal. App.3d 329, 184 Cal.Rptr. 566 (1982). The addition of requirements, not specified in the notice of a vacant position, after all the applications have been received is unfair to those who have applied in reliance upon the criteria described in the notice.

for his decision to recommend Ms. McKinney in his telephone conversation of August 30, 1984 was the fact that Ms. McKinney had a masters degree. The same reason was given by the superintendent in a letter he later sent to the appellant in a belated attempt to comply with the statutory requirement that the Board supply a written statement of reasons for its failure to appoint the appellant to the vacant position.[7] Even at trial, Superintendent Blackwell admitted he had no idea of the field in which Ms. McKinney had received her graduate degree.

■ We have recently held that "while the possession of a masters degree is one factor to be considered in determining teacher competence, it is not the only factor." *Higgins v. Board of Education*, 168 W.Va. 448, 453, 286 S.E.2d 682, 685 (1981). Clearly, the appellees erred in premising their evaluation of Ms. McKinney's qualifications solely on the fact that she had a more advanced degree than the appellant.

■ Moreover, it is evident that the appellees failed to investigate and evaluate the qualifications, credentials, education, and experience of the respective candidates for the vacant position before rendering their decision. Such an investigation and evaluation is required by the Board's own rules and regulations. Wyoming County Board of Education Policy No. 3035 provides, in pertinent part:

"(4) Applications will be reviewed and qualifications, certification, and experience will be checked by superintendent and staff.

7. The appellant did not receive written notification of the reasons for Ms. McKinney's hiring, as required by W.Va.Code, 18A–4–8b(a), and the Board's own Policy No. 3500, until November, 1984, at which time her grievance proceeding was well under way.

8. Superintendent Blackwell did testify that Ms. McKinney was better able to cooperate with students and staff. He admitted, however, that he based this assessment solely on the fact that the appellant had "had some problems" with the principal of her school. We believe something more was required, as indicated in *Bishop v.*

"(5) If the job vacancy is within a school, the building principal will have access to the applications, an opportunity to interview each applicant, discuss the applicant with the assistant superintendent, and make a joint recommendation to the superintendent of schools."

In addition, Policy No. 1610 provides that:

"6. If a job opeining [sic] exists, all applicants for position in that job category will be considered.

\*   \*   \*   \*   \*   \*

"9. In general, both training and experience of applicant will be considered in job placement."

In the case at bar, Superintendent Blackwell did not review the qualifications and experience of the applicants, as indicated by the fact that, even at trial, he could not accurately detail the appellant's teaching experience or the nature and extent of her graduate studies or extracurricular activities. There is no evidence that the superintendent contacted the appellant to clarify her qualifications, or that he discussed filling the vacancy with the principal at Mullens Middle School. While Superintendent Blackwell had interviewed Ms. McKinney earlier in the summer, he made no attempt to give the appellant such consideration. In short, Superintendent Blackwell unilaterally decided that qualification for the position was "based on degree and specializations."[8]

As stated in *State ex rel. Hawkins v. Tyler County Board of Education*, 166 W.Va. 363, 367, 275 S.E.2d 908, 912 (1980), we have repeatedly held:

*Keystone Area Education Agency Number 1*, 275 N.W.2d 744, 751 (Iowa 1979):

"[W]hether [a teacher] cooperates and coordinates sufficiently to be 'qualified' is a subjective determination susceptible to abuse. A determination of 'unqualified' predicated on lack of cooperation and coordination should not rest on mere generalities, conclusions, or rumors. It should rest solidly on objective evidence genuinely demonstrating want of those attributes."

No objective evidence demonstrating the appellant's inability to cooperate was offered in this case.

"County boards of education are bound by procedures they properly establish to conduct their affairs. *Powell v. Brown,* [160 W.Va. 723] 238 S.E.2d 220 (1977)."

*See also State ex rel. Wilson v. Truby,* 167 W.Va. 179, 281 S.E.2d 231 (1981); *Trimboli v. Board of Education,* 163 W.Va. 1, 254 S.E.2d 561 (1979). We conclude that the appellees failed to follow their own promulgated procedures for the filling of vacant teaching positions by failing to investigate and properly evaluate the qualifications of the applicants for the position of language arts teacher at Mullens Middle School.[9]

Finally, we note that the vacancy at Mullens Middle School arose in an unusual manner. It appears from the testimony that earlier in the summer of 1984, the physical education teacher at Mullens High School resigned to take an administrative job at another school. Frank Harrison, the physical education teacher at Mullens Middle School, heard about the vacancy at Mullens High School and spoke to Superintendent Blackwell about filling that position on August 22, 1984. At about the same time, Terry Houck, the language arts teacher at Mullens Middle School, expressed interest in the physical education position at Mullens Middle School should Mr. Harrison be transferred to Mullens High School, even though Mr. Houck lacked a specialization to teach physical education. The vacancy in the physical education teaching position at Mullens High School was posted on the same day as the vacancy in the language arts teaching position at Mullens Middle School. Mr. Harrison was subsequently assigned to the vacancy at Mullens High School, and Mr. Houck was hired to replace Harrison, even though other teachers in the system who had specializations in physical education and were teaching out of their fields had expressed interest in the position. It was Mr. Houck's reassignment to physical education teacher which created the vacancy at Mullens Middle School which is the subject of this appeal.

The transfer of Mr. Houck to a position out of his field over other teachers with specializations in physical education appears most irregular to this Court. When this fact is considered in light of the appellees' ignorance of the qualifications of the respective candidates for the vacant language arts position created by Mr. Houck's reassignment and their disregard for their own rules and regulations, the entire hiring process in this case suggests a manipulation of the school system for the purpose of creating a job for Superintendent Blackwell's sister-in-law.

County boards of education have substantial discretion in matters relating to the hiring, assignment, transfer, and promotion of school personnel. *State ex rel. Hawkins v. Tyler County Board of Education,* 166 W.Va. at 366, 275 S.E.2d at 911. *See* W.Va.Code, 18A–2–7. Nevertheless, this discretion must be exercised reasonably, in the best interest of the schools, and in a manner which is not arbitrary and capricious. *State ex rel. Hawkins v. Tyler County Board of Education, supra; Beverlin v. Board of Education,* 158 W.Va. 1067, 216 S.E.2d 554 (1975).

"Mandamus will lie to control a board of education in the exercise of its discretion ... upon a showing of caprice, passion, partiality, fraud, arbitrary conduct, some ulterior motive or misapprehension of the law." *State ex rel. Hawkins v. Tyler County Board of Education,* 166 W.Va. at 366, 275 S.E.2d at 912, *citing, State ex. rel. Withers v. Board of Education,* 153 W.Va. 867, 172 S.E.2d 796 (1970); *State ex rel. Payne v. Board of Education,* 135 W.Va. 349, 63 S.E.2d 579 (1951). We conclude that the appellees acted arbitrarily and capriciously in hiring Ms. McKinney to fill the position of language arts teacher at Mullens Middle School with-

---

9. We note that the position in question did not become vacant until just before the beginning of the school year. Wyoming County Board of Education Policy No. 3035 addresses such a situation: "(8) In the event that an unexpected vacancy occurs that must be filled immediately, the superintendent and his assistant will contact the building principal and together will review the applications for transfer or new applications and employ an individual." There is no evidence here that the appellees complied with even this abbreviated procedure.

out first evaluating and comparing the qualifications, including seniority, of all of the applicants for that position. Consequently, the appellees should repost the position of language arts teacher, conduct a proper evaluation, and make an appointment in accordance with W.Va.Code, 18A–4–8b (1983), and the Board's personnel policy.[10]

Accordingly, the judgment of the Circuit Court of Wyoming County is reversed, and the case is remanded to that court with directions to enter an order issuing a moulded writ of mandamus not inconsistent with this opinion and to award attorney's fees in accordance with the provisions of W.Va.Code, 18A–4–8b (1983).[11]

Reversed and Remanded with Directions.

---

10. It would also appear that because of the irregular appointment of the physical education teachers at Mullens High School and Mullens Middle School, the appellees should determine if these positions are now properly filled.

11. W.Va.Code, 18A–4–8b (1983), in material part, provides: "Any board failing to comply with the provisions of this article may be compelled to do so by mandamus and shall be liable to any party prevailing against the board for court costs and his reasonable attorney fee, as determined and established by the court."