589 S.E.2d 221

**Mitzi AKERS, Petitioner
Below, Appellant,**

v.

**The BOARD OF EDUCATION OF
the COUNTY OF RALEIGH,
Respondent Below, Appellee.**

**No. 31156.**

Supreme Court of Appeals of
West Virginia.

Submitted:  Sept. 23, 2003.

Filed:  Oct. 31, 2003.

McGraw, J., dissented and filed opinion.

John Everett Roush, WV School Services Personnel Assoc., Charleston, for the Appellant.

Erwin L. Conrad, Conrad & Conrad, Fayetteville, for the Appellee.

PER CURIAM:

Mitzi Akers appeals from the May 1, 2002, decision of the Circuit Court of Kanawha County affirming the administrative denial of the grievance she filed with the West Virginia Education and State Employees Grievance Board following her failure to be awarded one of four summer "Medicaid Billing Reviewer" positions. While the position was posted for special education teachers and Appellant is employed as a Secretary III/Accountant II, she argues that the position should have been posted as a service personnel position rather than as a professional position. Upon our full review of the record in this matter along with the arguments of counsel, we find no error and, accordingly, affirm.

## I. Factual and Procedural Background

On or about May 7, 2001, the Appellee Raleigh County Board of Education (the "Board") posted a vacancy list announcing openings directed at Special Education teachers for four "Medicaid Billing Reviewers." Appellant applied for one of these positions, but was informed that she did not meet the qualifications for the position.[1] In a letter dated May 30, 2001, from Cynthia Corley–Hicks, the Director of Special Education, Appellant was advised that "[i]n evaluating your qualifications it was determined that you do not have experience in school Medicaid billing procedures as per the job posting."

Appellant filed a grievance on or about June 6, 2001, pursuant to the provisions of West Virginia Code § 18–29–4 (1995) (Repl. Vol. 2003), through which she challenged the Board's decision that she was not qualified for the Medicaid Billing Reviewer position. By decision dated June 16, 2001, the grievance was denied at Level I. Following a Level II hearing on June 27, 2001, Appellant's grievance was again denied. Appellant opted to bypass the Level III stage of the grievance process, and proceeded to Level IV of the grievance procedures. An evidentiary hearing was held on September 7, 2001, for the purpose of supplementing the record established at the lower levels. By decision dated December 5, 2001, the administrative law judge ("ALJ") denied Appellant's grievance. Following an appeal to the circuit court, Appellant was again denied relief when the circuit court affirmed the ALJ through its order entered on May 1, 2002. Through her appeal to this Court, Appellant seeks a reversal of the lower court's ruling that the position of Medicaid Billing Reviewer was properly designated by the Board as professional in nature.

## II. Standard of Review

In syllabus point one of *Randolph County Board of Education v. Scalia*, 182 W.Va. 289, 387 S.E.2d 524 (1989), we announced: "A final order of the hearing examiner for the West Virginia Educational Employees Grievance Board, made pursuant to W.Va.Code, 18–29–1, *et seq.* (1985), and based upon findings of fact, should not be reversed unless clearly wrong." As we explained in *Martin v. Randolph County Board of Education*, 195 W.Va. 297, 465 S.E.2d 399 (1995), our review of an administrative grievance is subject to the same statutory bases for review that are set forth in West Virginia Code § 18–29–7 (1985) (Repl. Vol. 2003).[2] 195

---

1. According to the job posting, the following qualifications were required:
   - Must have experience in school Medicaid billing procedures
   - Must be knowledgeable about special education due process procedures and county due process forms as outlined in WV Policy 2419 and Raleigh County Board of Education Special Education Policy and Procedures
   - Must be knowledgeable about student's rights in relation to confidentiality (FERPA)
   - Must be able to demonstrate competency in designing database/spreadsheet formats
   - Preference will be given to experienced applicants[.]

2. Under West Virginia Code § 18–29–7, the necessary grounds for reversal of an ALJ's decision exist when it is determined that the ruling:
   (1) was contrary to law or lawfully adopted rule, regulation or written policy of the chief administrator or governing board, (2) exceeded the hearing examiner's statutory authority, (3)

W.Va. at 304, 465 S.E.2d at 406. Accordingly, we proceed to determine whether the circuit court committed error in affirming the ALJ's decision to deny Appellant's grievance.

## III. Discussion

■ Contesting the decision reached through both administrative and judicial review of her grievance, Appellant asserts that the position of Medicaid Billing Reviewer was improperly designated as requiring the qualifications of a professional employee. She maintains that the position is essentially clerical in nature and that she has the necessary skills to fulfill the requirements of such position.

As support for her position that the posted opening was actually a service and not a professional position,[3] Appellant looks to the definitions provided by statute for distinguishing between professional and service school personnel. Under West Virginia Code § 18A–1–1 (2000) (Repl. Vol. 2001), the following definitions pertaining to school personnel are set forth:

(b) "Professional personnel" means persons who meet the certification and/or licensing requirements of the state, and includes the professional educator and other professional employees.

(c) "Professional educator" is synonymous with and has the same meaning as "teacher"....

(d) "Other professional employee" means that person from another profession who is properly licensed and is employed to serve the public schools and includes a registered professional nurse....

(e) "Service personnel" means those who serve the school or schools as a whole, in a nonprofessional capacity, including such areas as secretarial, custodial, maintenance, transportation, school lunch and as aides.

Determining in conclusory fashion that the position of Medicaid Billing Reviewer did not fit into any of the professional personnel definitions, Appellant then looked to the statutory descriptions for the service personnel titles of "Secretary II" and "Accountant II." *See* W. Va.Code § 18A–4–8(i)(5), (76) (Supp. 2002). Since the secretarial position is defined to include the duties of "performing general clerical tasks,... preparing reports,... operating office machines, keeping records and handling routine correspondence," and the accountant position requires the maintenance of records and responsibility for the accounting process associated with billings, Appellant concludes that the position of Medicaid Billing Reviewer necessarily falls into the service personnel category. *Id.*

In response to Appellant's argument that the Medicaid Billing Reviewer position is definitively a service personnel title, the Board observes that the Legislature has classified eighty-one different service personnel positions. *See* W. Va.Code § 18A–4–8(i)(4) to (84). Yet, as the Board notes, nowhere within that extensive list of service personnel titles is one which is designated as Medicaid Billing Reviewer. Given the Legislative specification of each and every service personnel position in contrast to the more generalized descriptions of professional personnel, the Board argues that the absence of the Medicaid Billing Reviewer job title from the lengthy list of service titles suggests that the position at issue does not fall within the school service personnel classification.

In resolving this issue of whether the Medicaid Billing Reviewer position falls within the professional or the service ambit, we look to the testimony presented at the administrative level regarding the nature of the position. Ms. Hicks explained how with the advent of Medicaid billing for previously unreimbursed services such as initial and triennial individualized educational programs ("IEPs"), IEP updates, personal care, and

---

was the result of fraud or deceit, (4) was clearly wrong in view of the reliable, probative and substantial evidence on the whole record, or (5) was arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

**3.** In *Martin*, we recognized that all school personnel positions must be either service or professional under our statutory schema. 195 W.Va. at 312, 465 S.E.2d at 414.

care coordination,[4] thousands of teacher-completed forms were generated which in turn had to be checked for accuracy, eligibility, and content to insure payment.[5] If these forms were submitted in an incomplete fashion or if they contained non-compliant information, the time sensitive documents would be returned and the Board would then possibly forfeit its opportunity for reimbursement of such costs.

When asked whether the position of Medicaid Billing Reviewer is a clerical position, Ms. Hicks expounded:

Not at this time. My hope is, is that once we get this—the new billable services up and going, that eventually it will be able—the program, the process, will be developed, we will have simplified it, teachers will be knowledgeable to where we will not have to review for the accuracy.

Like I said, this is the first year that teachers have had to complete, in the entirety, to do everything that they've done this year. We've done extensive training.

My hope is that once we get this up and going and work all of the kinks out, that eventually this could be and could become a service personnel position. But, at this point in time, I don't think the county can stand to—we're talking about an extensive revenue source and, if this is done incorrectly, then it's going to be kicked out and Medicaid only allows you one year. You can only go back and resubmit, and we're not the ones that submit this. This has to be submitted to RESA [regional educational service agency] who, in turn, deals with six counties; who then, in turn, has to do that. So, I do not think at this point in time it is a service personnel position.

Even Appellant herself acknowledged the need for a professional employee, "somebody in the Special Ed Department," to hold at least one of the four Medicaid Billing Reviewer positions.[6]

Appellant admitted that she had no experience in completing Medicaid billing forms for a school system. Her only governmental billing experience was in connection with her brief four-month period of employment by a private psychologist whose patients were primarily adults.[7] Ms. Hicks explained how private sector billing experience would not correlate to the school Medicaid billing experience necessary for the position at issue.[8] While Appellant tried to characterize this position as one that was routinely fulfilled by service personnel during the course of the school year, the evidence submitted below disproves this assertion.[9] On this point, the ALJ expressly found that "the secretaries in the Special Education Office do not fill out medicaid billing code information and do not review medicaid billing forms for accuracy or return forms to teachers or other professionals when they are inaccurate."

As to why a person applying for the Medicaid Billing Reviewer position needed to be knowledgeable of special education due process procedures and the IEP process in general, Ms. Hicks testified:

4. Medicaid began reimbursing schools for these services in 2000.

5. The specific figure provided was 5,000 billing forms.

6. During her testimony at the June 27, 2001, hearing, Appellant suggested that three of the four positions could be filled by service personnel with a fourth position being filled by a professional whose job it would be to supervise or review the work of the other three employees. This comment was made in connection with her testimony that because she does not directly deal with IEPs, she would need someone to oversee her review of the teacher generated forms.

7. Appellant testified that she completed some Social Security billing forms in her position as a transcriptionist.

8. She testified that "[i]n the private sector they do not bill for IEP updates, they do not bill for care coordination, they do not bill for, under our term what is considered personal care; these are totally different, separate entities than what the private sector would bill for." Therapy services were the only "commonalities" in her opinion between private and public Medicaid billings.

9. Ms. Hicks testified that the Medicaid billing at issue here had never been performed by secretaries at the Special Education office. Instead, those secretarial employees had performed clerical duties in connection with what she referred to as the "'old' billable service[s]," which were services such as speech therapy, OT therapy, PT therapy, and psychological services.

I'm talking about a good knowledge base, a good working knowledge of Special Education, the process, forms, law, how the process flows. You're going to have to know about eligibility, you're going to have to know about care-coordinated activities. You're going to have to know, in intimate detail, what is on that IEP, the sections, and how they relate to care-coordinated activities.

You're going to have to know if a child—you're going to have to look at your dates to determine is this [an] annual IEP, was it held within timelines [sic], therefore, can you bill for this IEP during this timeframe [sic]; has someone else already billed for that. You're going to have to know the due process and, if there is a question, then you've got to be able to go into the file, pull the student's file, go through that due process and a make a determination. If that teacher has made an error, then you're going to have to kick that out, hold that and then go back to the teacher, at a later date, prior to submitting that.

In rejecting Appellant's arguments that the Medicaid Billing Reviewer position is clerical in nature, the ALJ determined:

> While there are some clerical aspects to the duties of the Medicaid Billing Reviewer, it is clear an understanding of the laws, rules, and regulations governing special education is necessary to perform the essential assignments of the position. Additionally, detailed knowledge of the IEP process, and an awareness of the types of activities that can and cannot be covered in care coordination are essential to carrying out the tasks of the position.

Appellant suggests that had the one-day IEP training that was required of all special education teachers been available to her,[10] she would have had the knowledge necessary to fulfill the posted job duties. We disagree. While the focus of that one-day training was "appropriate IEP development, requirements for the Continuous Improvement Process and Medicaid billing procedures," a working knowledge of special education was required to even be able to benefit from this highly specialized one-day "update on the law" type of training.

It is axiomatic that "[c]ounty boards of education have substantial discretion in matters relating to the hiring, assignment, transfer, and promotion of school personnel. Nevertheless, this discretion must be exercised reasonably, in the best interests of the schools, and in a manner which is not arbitrary and capricious." Syl. Pt. 3, *Dillon v. Board of Educ.*, 177 W.Va. 145, 351 S.E.2d 58 (1986). As the ALJ found below and with which the circuit court agreed, "[i]t was within RCBOE's [the Board's] discretion and not arbitrary and capricious for RCBOE to identify the positions as professional." Moreover, as the circuit court observed, Appellant "did not possess the requisite qualifications to assume and perform the duties required of a Medicaid Billing Reviewer." We agree.[11]

Accordingly, the decision of the Circuit Court of Kanawha County is hereby affirmed.

Affirmed.

Justice McGRAW dissents and files a dissenting opinion.

McGRAW, J., dissenting.

I dissent from the majority's decision in this case because the summer Medicaid Billing Review position for which Appellant applied and for which she is qualified, is clerical, rather than professional, in nature. The position, as posted, does not require any professional licensure or professional certification. In my view, therefore, Appellant, the most senior service personnel applicant for the position, should have been awarded one of the four summer positions.

For the reasons stated, I respectfully dissent.

---

10. This training was offered only to professional employees in the Special Education field during the period of February 26 to March 7, 2001.

11. Not only was Appellant unfamiliar with IEP procedures and school Medicaid billing, but she was not competent in designing database/spreadsheet formats.