531 S.E.2d 76

**Harold F. FLINT, Jr., Raymond A. Anderson, Bernard Talbott, Kenneth Wagner, Charles Clutter, George Baker, Michael Baker, Danny Dennison, and David L. Shaw, Plaintiffs Below, Appellees,**

v.

**The BOARD OF EDUCATION OF the COUNTY OF HARRISON, A West Virginia Statutory Corporation, Defendant Below, Appellant.**

No. 25898.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 22, 1999.

Decided Dec. 10, 1999.

Concurring and Dissenting Opinion of Justice McGraw June 28, 2000.

Charles G. Johnson, Esq., Johnson, Simmerman & Broughton, Clarksburg, West Virginia, Attorney for Appellees.

Howard E. Seufer, Jr., Esq., Kimberly S. Croyle, Esq., Bowles, Rice, McDavid, Graff & Love, Parkersburg, West Virginia, Attorneys for Appellant.

Kathryn Reed Bayless, Esq., Bayless & McFadden, West Virginia Association of School Administrators and West Virginia School Boards Association, Dean A. Furner, Esq., Spillman, Thomas & Battle, Wood County Board of Education, for Amici Briefs.

PER CURIAM:

This case is before this Court upon appeal of a final order of the Circuit Court of Harrison County entered on November 10, 1998. In that order, the circuit court found that nine service employees[1] (hereinafter "the plaintiffs") of the Harrison County Board of Education (hereinafter "BOE") hired under 240–day annual contracts were entitled to compensation under 261–day annual contracts. The plaintiffs were awarded back pay for the 1996–1997 and 1997–1998 school years in the amount of the difference in pay and other benefits between a 261–day contract and a 240–day contract for each school year. The BOE was also ordered to comply with the provisions of W.Va.Code § 18A–4–5b (1990).

In this appeal, the BOE contends the plaintiffs' grievance was not timely filed. The BOE also contends that the circuit court erred by finding that the plaintiffs were entitled to compensation under 261–day annual contracts. This Court has before it the petition for appeal, the entire record, and the briefs and argument of counsel and amici curiae. For the reasons set forth below, the final order of the circuit court is affirmed, in part, and reversed, in part.

I.

In the early 1980s, the BOE began to reduce the number of professional and service employees holding 261–day employment contracts in an effort to reduce personnel costs which were not subsidized by State aid.[2] Rather than laying-off employees or reducing their benefits, the BOE either eliminated or posted 261–day positions as they became vacant with shorter employment terms of 240 days, and in some cases, 220 or 200 days. As a result of this policy, the plaintiffs in this action were hired between 1981 and 1990 under 240–day annual employment contracts.[3] The difference between a 240–day contract and a 261–day contract is that under the latter, an employee receives 21 paid vacation days.

1. The employees and their job titles are as follows: Harold F. Flint, Jr., Mechanic; Raymond A. Anderson, Mechanic; Bernard Talbott, Buyer, Clerk II, Inventory Supervisor; Kenneth Wagner, Bus Operator, School Bus Supervisor; Charles Clutter, Bus Operator, School Bus Supervisor; George Baker, Carpenter II, General Maintenance, Mason; Michael Baker, Carpenter II, General Maintenance, Mason; Danny Dennison, Carpenter I, General Maintenance, Mason; and David L. Shaw, Carpenter I, General Maintenance, and Mason.

2. The BOE must pay, from local funds, for those days of a contract term in excess of 200 days. According to the Superintendent, the BOE had more than 100 employees in excess of the State funding formula allowance when he came to the county in 1985, resulting in an unsubsidized cost of over two million dollars.

3. Two of the plaintiffs, Kenneth Wagner and Charles Clutter, were actually hired in 1967 and 1970, respectively, as bus drivers. However, they were subsequently assigned to supervisory positions with 240–day contracts.

In October 1995, the plaintiffs filed a complaint against the BOE in the Circuit Court of Harrison County seeking 261–day employment contracts and retroactive pay. They alleged that the BOE was violating W.Va. Code § 18A–4–5b (1990) which requires that uniformity apply to "all salaries, rates of pay, benefits, increments or compensation for all persons regularly employed and performing like assignments and duties within the county[.]" The plaintiffs further alleged that the BOE was violating the discrimination and favoritism provisions of W.Va.Code §§ 18–29–2(m) and (o) (1992), respectively.

On June 19, 1997, the circuit court ordered the plaintiffs to exhaust their administrative remedies. Accordingly, the plaintiffs initiated a grievance with the BOE at Level Two. The grievance was denied on both procedural grounds and the merits, and the plaintiffs appealed to Level Four.[4] On January 22, 1998, the Level Four decision was issued denying the claims of seven of the plaintiffs,[5] all of whom held multi-classified jobs.[6] The hearing examiner found that for purposes of W.Va.Code § 18A–4–5b, these plaintiffs were not "similarly situated" to and could not compare themselves to central office administrators or other service personnel with 261–day contracts. However, the hearing examiner did find that the BOE violated W.Va.Code § 18A–4–5b with respect to plaintiffs Raymond Anderson and Harold Flint because they have the same classification as two other BOE employees with 261–day contracts. Because Anderson and Flint knew of the contract length disparities since the early 1980s, the hearing examiner limited their back pay relief to one year prior to the filing of their grievance in accordance with W.Va.

Code § 18–29–3(v) (1992).[7] The BOE appealed this decision to the circuit court.[8]

Following a hearing on the matter, the circuit court reversed the decision of the hearing examiner pertaining to the seven plaintiffs with multi-classified jobs. The circuit court stated that plaintiffs performed substantially similar services as the 261–day service employees and therefore, were entitled to the same vacation benefits. Thus, these plaintiffs were awarded back pay for the 1996–1997 and 1997–1998 school years. The decision of the hearing examiner regarding plaintiffs Flint and Anderson was affirmed. Thereafter, the BOE filed this appeal.

## II.

■ We begin our analysis by setting forth the standard of review. In Syllabus Point 1 of *Randolph County Bd. of Educ. v. Scalia*, 182 W.Va. 289, 387 S.E.2d 524 (1989), we held that "[a] final order of the hearing examiner for the West Virginia Educational Employees Grievance Board, made pursuant to W.Va.Code, 18–29–1, *et seq.* (1985), and based upon findings of fact, should not be reversed unless clearly wrong." In *Phillips v. Fox*, 193 W.Va. 657, 661, 458 S.E.2d 327, 331 (1995), we stated that,

In reviewing challenges to the findings and conclusions of the circuit court, we apply a two-prong deferential standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review. (Citation omitted).

**4.** W.Va.Code § 18–29–4(c) (1995) allows a Level Two decision to be appealed directly to Level Four.

**5.** Bernard Talbott, Kenneth Wagner, Charles Clutter, George Baker, Michael Baker, Danny Dennison, and David Shaw.

**6.** W.Va.Code § 18A–4–8 (1994) defines "multi-classification" as "personnel employed to perform tasks that involve the combination of two or more class titles in this section. In such instances the minimum salary scale shall be the higher pay grade of the class titles involved." We note

that this statute was subsequently amended in 1996, but the amendments are not relevant to this case.

**7.** W.Va.Code § 18–29–3(v) (1992) provides that "[t]he doctrine of laches shall not be applied to prevent a grievant or grievants from recovering back pay or other appropriate relief for a period of one year prior to the filing of a grievance based upon a continuing practice."

**8.** W.Va.Code § 18–29–7 (1985) allows for appeals to the circuit court.

*See also Breza v. Ohio County Bd. of Educ.,* 201 W.Va. 398, 400, 497 S.E.2d 548, 550 (1997). With these standards in mind, we now address the issues before us.

■ As its first assignment of error, the BOE contends that the plaintiffs' grievance was untimely filed. The BOE's argument is based on the fact that six of the nine plaintiffs knew of the contract disparities for more than a decade before they filed their grievance. The other three grievants knew of the contract disparities by at least 1994. Thus, the BOE asserts that the plaintiffs waited too long to commence their grievance.

W.Va.Code § 18–29–4 (1995) sets forth the procedure for an education employee to file a grievance. Pursuant to W.Va.Code § 18–29–4(a)(1), an employee must institute a grievance by scheduling a conference with his or her immediate supervisor "within fifteen days following the occurrence of the event upon which the grievance is based, or within fifteen days of the date on which the event became known to the grievant or within fifteen days of the most recent occurrence of a continuing practice giving rise to a grievance[.]" Based on this statute, the plaintiffs maintain that their grievance was timely filed because the BOE's failure to provide uniform contracts to similarly situated employees constituted a "continuing practice." In other words, the plaintiffs claim that because the BOE was not providing uniform vacation benefits to its employees when the plaintiffs filed their grievance, there was a present violation of W.Va.Code § 18A–4–5b, and therefore, their grievance was timely. We agree.

In *Martin v. Randolph County Bd. of Educ.,* 195 W.Va. 297, 465 S.E.2d 399 (1995), we addressed the timeliness issue with regard to a claim of sex discrimination in compensation. The plaintiff, Sarah Martin, alleged that she was the victim of sex discrimination because she received approximately $4000.00 less in salary than her male counterpart. The compensation disparity began in 1992, when Ms. Martin, an assistant fiscal officer (a professional classification), agreed to a change in contract because her position was being eliminated pursuant to personnel cutbacks. Ms. Martin was reclassified as service personnel and her job title changed to Accountant III/Employee Benefits Supervisor. At that time, Ms. Martin was told that Chriss Kiess, a purchasing agent in the finance department, would also have his salary reduced. To the contrary, Mr. Kiess' salary rose as Ms. Martin's was reduced even though they had approximately the same number of years of service. Ms. Martin filed a grievance which was denied by the administrative law judge as time-barred because the salary gap was created in 1990, but she did not institute her grievance until 1992.

On appeal, this Court found that Ms. Martin's complaint about the discrepancy in salaries was not completely time-barred. Citing the decision in *West Virginia Institute of Technology v. West Virginia Human Rights Comm'n,* 181 W.Va. 525, 534, 383 S.E.2d 490. 499 (1989), we stated:

'Unlawful employment discrimination in the form of compensation disparity based upon a prohibited factor such as race, gender, national origin, etc., is a "continuing violation," so that there is a present violation of the antidiscrimination statute for as long as such compensation disparity exists; that is, each paycheck at the discriminatory rate is a separate link in a chain of violations. Therefore, a disparate-treatment employment discrimination complaint based upon allegedly unlawful compensation disparity is timely brought if it is filed with the statutory limitation period after such compensation disparity last occurred.'

*Martin,* 195 W.Va. at 307, 465 S.E.2d at 409. Recognizing that *West Virginia Institute of Technology* was decided under the West Virginia Human Rights Act, this Court stated that there was no reason not to apply the same analysis to discrimination complaints based on W.Va.Code 18–29–2 (1992). Although the discrimination claim in this case is not based on a protected class, we believe that *Martin* is still applicable.

To the contrary, the BOE relies upon this Court's decision in *Spahr v. Preston County Bd. of Educ.,* 182 W.Va. 726, 391 S.E.2d 739 (1990). In *Spahr,* five vocational teachers filed a grievance after learning that they had been mistakenly denied a pay supplement for

four years because of an inadvertent administrative oversight. The Grievance Board found that the teachers were entitled to the supplemental pay but refused to grant them back pay on the basis that their grievance was not timely filed for the four prior years. The teachers appealed to the circuit court which found that the grievance was timely because it was filed within fifteen days of the date on which the event became known to the grievants and within fifteen days of the most recent occurrence of a continuing practice giving rise to a grievance.

Upon appeal by the Preston County Board of Education, this Court agreed that the grievance was timely because it was filed within 15 days of the date that the teachers had actual knowledge of their entitlement to the supplemental pay. This Court further found that the grievance could extend to the prior years because of the discovery rule exception. However, this Court stated it did not believe that each new paycheck constituted a "continuing practice" as set forth in the statute. We explained that "[c]ontinuing damage ordinarily does not convert an otherwise isolated act into a continuing practice." 182 W.Va. at 729, 391 S.E.2d at 743. In that particular case, a single act, i.e., the inadvertent failure to include the teachers on the list for the salary supplement, caused continuing damage.

■ Based upon *Spahr*, the BOE argues that the posting of the plaintiffs' jobs as 240-day positions was an isolated act that does not constitute a continuing practice merely because the plaintiffs held shorter contract terms year-to-year than some other employees. We believe that the BOE's reliance on *Spahr* is misplaced. We fail to see how the one-time act of failing to place the grievants' names on a list in *Spahr* compares to the BOE's continuous failure to provide uniform employment contracts to similarly situated employees. In Syllabus Point 1 of *Morgan v. Pizzino*, 163 W.Va. 454, 256 S.E.2d 592 (1979), this Court stated that "[s]chool personnel regulations and laws are to be strictly construed in favor of the employee." Accordingly, we find that the plaintiffs' grievance was timely filed.

Having found that the grievance was timely, we now consider whether the plaintiffs proved their case on the merits. The BOE contends that seven of the plaintiffs are not entitled to 261–day contracts because they do not have the same classifications as other employees who have 261–day contracts. The BOE acknowledges that the other two plaintiffs have the same classification as two other BOE employees with 261–day contracts, but asserts that because these two plaintiffs are paid according to the same salary scale as the like-classified employees, their claims must also fail.

■ W. Va.Code § 18A–4–5b provides that "uniformity shall apply to all salaries, rates of pay, benefits, increments or compensation for all persons regularly employed and performing like assignments and duties within the county[.]" Similarly, W. Va.Code § 18–29–2 prohibits discrimination and favoritism with respect to any employee of a board of education. In particular, W.Va. Code § 18–29–2(a) allows recovery for "any discriminatory or otherwise aggrieved application of unwritten policies or practices of the board" and "any specifically identified incident of harassment or favoritism." W.Va.Code § 18–29–2(m) defines "discrimination" as "any differences in the treatment of employees unless such differences are related to the actual job responsibilities of the employees or agreed to in writing by the employees." W. Va.Code § 18–29–2(*o*) defines "favoritism" as "unfair treatment of an employee as demonstrated by preferential, exceptional or advantageous treatment of another or other employees." In order to establish a *prima facie* case of discrimination or favoritism under W.Va.Code §§ 18–29–2(m) and (*o*), a grievant must establish the following:

(a) that he is similarly situated, in a pertinent way, to one or more other employees;

(b) that the other employee(s) have been given advantage or treated with preference in a significant manner not similarly afforded him; and

(c) that the difference in treatment has caused a substantial inequity to him, and that there is no known or apparent justification for this difference.

*See Martin,* 195 W.Va. at 308, 465 S.E.2d at 410.

In this case, seven of the nine plaintiffs are multi-classified.[9] In an effort to show uniformity, discrimination, and favoritism violations by the BOE, the plaintiffs have compared themselves to other service employees holding 261–day contracts. However, these plaintiffs have been unable to identify a single 261–day employee who holds the exact same multi-classification. As set forth above, W.Va.Code § 18A–4–5b requires uniformity in salaries, benefits, etc., for those employees who are performing "like assignments and duties." Obviously, employees who do not have the same classifications are not performing "like assignments and duties." Even those employees who have some classifications in common with another service employee would not be performing "like assignments and duties" because they have additional duties in relation to the other classifications they hold. Therefore, these plaintiffs are not entitled to the same contract terms as the 261–day employees with whom they compare themselves.

For the same reasons, these seven plaintiffs have failed to show that the BOE violated the discrimination and favoritism provisions of W.Va.Code § 18–29–2(m) and (*o*). As we noted above, the first prerequisite for establishing a *prima facie* case of discrimination or favoritism is a showing that the grievant is similarly situated, in a pertinent way, to one or more other employees. As we just explained, these plaintiffs are unable to make such a showing. Accordingly, the BOE is not required to provide 261–day contracts to these seven plaintiffs.

The two remaining plaintiffs, Raymond Anderson and Harold Flint, were able to establish uniformity, discrimination, and favoritism violations before the hearing examiner by showing that two other BOE employees also classified as "mechanics" have 261–day contracts. It was undisputed that Gordon Dawson and Junior Richards, both mechanics for the BOE, perform the same duties, hold the same classification, and work the same number of days as plaintiffs Anderson and Flint. The only difference shown between these four employees was that Mr. Dawson and Mr. Richards were hired before the BOE adopted the practice of offering only 240–day contracts.

Although the BOE acknowledges that plaintiffs Flint and Anderson are similarly situated to Mr. Dawson and Mr. Richards, it claims that it is not required to afford these plaintiffs the same contract terms because W.Va.Code § 18A–4–8 only entitles service personnel to an employment term of 200 days. The BOE argues that because the statute empowers, but does not require, the BOE to contract with "all or part of these personnel for a longer term," it does not require uniformity in the length of service employees' contracts. We disagree.

Under W.Va.Code § 18A–4–8, the BOE is authorized to afford service personnel a longer contract term. Likewise, W.Va. Code § 18A–4–5b provides that "[t]he county board of education may establish salary schedules which shall be in excess of the state minimums fixed by this article." In fact, "[c]ounty boards of education have substantial discretion in matters relating to the hiring, assignment, transfer, and promotion of school personnel. Nevertheless, this discretion must be exercised reasonably, in the best interests of the schools, and in a manner which is not arbitrary and capricious." Syllabus Point 3, *Dillon v. Board of Educ. of County of Wyoming,* 177 W.Va. 145, 351 S.E.2d 58 (1986). Thus, while it is clear that the BOE had the authority in the early 1980s to replace vacant 261–day positions with 240–day contracts, it could not disregard the uniformity requirement of W.Va.Code § 18A–4–5b. Therefore, we find that plaintiffs Anderson and Flint are entitled to compensation under 261–day contracts. However, in accordance with W.Va.Code § 18–29–3(v),[10] plaintiffs Anderson's and Flint's awards of back pay should be limited to the difference in compensation between a 240–day contract and a 261–day contract for the one year prior to the filing of this grievance and for the years thereafter while this case was pending.

---

**9.** *See* note 1, *supra.*

**10.** *See* note 7, *supra.*

Accordingly, for the reasons set forth above, the final order of the Circuit Court of Harrison County entered on November 10, 1998, is affirmed with respect to plaintiffs Anderson and Flint, and reversed with respect to plaintiffs Talbott, Wagner, Clutter, G. Baker, M. Baker, Dennison, and Shaw.

Affirmed, in part, Reversed, in part.

Judge FRED RISOVICH, II, sitting by temporary assignment.

Justice SCOTT did not participate.

McGRAW, Justice, concurring in part, and dissenting in part.

(Filed June 28, 2000)

While I concur with the majority as to the result reached concerning the two employees who are not multiclassified, I dissent from the Court's failure to permit the remaining seven employees to obtain similar relief. Under the rigid analysis employed by the majority, it is quite possible that the uniformity requirement of W. Va.Code § 18A–4–5b will soon become a nullity, since school boards are now free to evade this policy by simply expanding the number of employees subject to multiclassification. Given this very real threat, the Court should adopt a more liberal measure of comparison to determine whether employees are similarly situated for purposes of § 18A–4–5b. Because the Court has failed to do this in the present case, I respectfully dissent.