599 S.E.2d 667

Kevin DURIG and Rodney Wade,
Petitioners Below,

Kevin Durig, Petitioner Below, Appellant,

v.

THE BOARD OF EDUCATION OF THE
COUNTY OF WETZEL, Respondent
Below, Appellee.

No. 31672.

Supreme Court of Appeals of West Virginia.

Submitted: June 8, 2004.

Filed: June 24, 2004.

McGraw, J., concurred and filed separate opinion.

John Everett Roush, Legal Services, West Virginia School Services, Personnel Association, Charleston, for the Appellant.

Larry W. Blalock, Jackson Kelly, PLLC, Wheeling, for the Appellee.

PER CURIAM.

This is an appeal by Kevin Durig from an order of the Circuit Court of Kanawha County affirming a decision of the West Virginia Education and State Employees Grievance Board denying the Appellant's grievance. The Appellant, a mechanic employed by the Wetzel County Board of Education (hereinafter "BOE") under a 240–day annual contract, asserts that he is entitled to the benefits of a 261–day annual contract because he performs

the same or substantially similar duties as other mechanics who are employed under 261–day contracts. Upon review of this matter, we reverse the order of the Circuit Court of Kanawha County and conclude that the Appellant is entitled to compensation and benefits under 261–day contract terms. The Appellant is not, however, entitled to back pay or retroactive application of this Court's decision herein.

## I. Factual and Procedural History

The Appellant has been a mechanic employed by the Wetzel County BOE under a 240–day annual contract since December 15, 1999. On January 28, 2000, the Appellant filed a grievance asserting that he performs the same or substantially similar duties as two 261–day contract mechanics, Mr. Johnny Greathouse and Mr. Jimmy Titus, individuals who share the Appellant's same classification title and are employed by the BOE. The Appellant claims that he is entitled to compensation and benefits comparable to those received by the other two allegedly similarly situated and employed individuals.[1] The Appellant alleges that the BOE has violated West Virginia Code § 18A–4–5b (1990) (Repl. Vol.2001), requiring that uniformity apply to "all salaries, rates of pay, benefits, increments or compensation for all persons regularly employed and performing like assignments and duties within the county[.]" The Appellant further contends that the BOE has violated West Virginia Code § 18–29–2(m) (1992) (Repl.Vol.2003), prohibiting discrimination or favortism in the treatment of employees.[2]

In support of his claims, the Appellant presented extensive testimony regarding his performance of the same or substantially similar duties and responsibilities as the two other BOE employees working under 261–day annual contracts. According to the Ap-

pellant, the primary difference between him and the 261–day employees is that the 261–day employees receive certain paid vacation based upon the length of service. The evidence revealed that employees serving under a 261–day contract accrue paid vacation on a sliding scale, as follows: employees having served seven years or fewer receive two weeks of paid vacation; employees with seven to fifteen years experience receive three weeks; employees with sixteen or more years experience receive four weeks. Employees serving under a 240–day contract do not receive paid vacation and must request twenty-one "non-calendar" unpaid days annually. Thus, a 261–day contract employee with sixteen or more years experience works only one more day per year than a 240–day contract employee, but the 261–day contract employee receives twenty-one more paid days of employment.

The duties and responsibilities of the Appellant, Mr. Greathouse, and Mr. Titus were examined during the grievance hearings. The evidence indicated that all three mechanics share duties nearly equally during portions of the year in which children are attending school and buses are therefore in regular use. These duties include maintaining buses, changing tires, lubricating buses, changing oil, hauling broken down buses to the garage, hauling gravel, and delivering buses to certain sites. The evidence did reveal, however, that Mr. Greathouse performs the majority of the welding duties. During the summer months, all mechanics perform additional duties including extensive maintenance work on buses, body work, and seat repair. The Appellant testified, and the BOE did not dispute, that the only segment of these summer responsibilities for which the Appellant is absent is the three week

---

1. Prior to the Appellant's employment under a 240–day contract, he contends that he was informed that although some employees were employed under 261–day contracts, such contracts would not be offered for new employees. Thus, the Appellant was troubled when a 261–day contract secretarial position was posted in December 1999. In January 2000, the Appellant discussed these concerns with his supervisor, Mr. Jay Yeager. The grievance which underlies this action was thereafter filed on January 28, 2000.

2. West Virginia Code § 18–29–2(m) defines "discrimination" as "any differences in the treatment of employees unless such differences are related to the actual job responsibilities of the employees or agreed to in writing by the employees." West Virginia § 18–29–2(o) defines "favoritism" as "unfair treatment of an employee as demonstrated by preferential, exceptional or advantageous treatment of another or other employees."

portion in which the Appellant takes his required twenty-one non-calendar unpaid days.

In response to the Appellant's allegations, the BOE contended that the Appellant knowingly and voluntarily signed his contract of employment for a 240–day position and thereby accepted that position with the understanding that such acceptance would prevent him from receiving certain benefits available to 261–day contract employees. The BOE further maintained that no other employee was similarly situated with the Appellant, based upon differences in summer workload between the Appellant and the two individuals to whom he compares himself.

Subsequent to the Level IV hearing, the administrative law judge denied the Appellant's grievance, reasoning that the Appellant does not perform the same work as the other mechanics because the Appellant is not employed for portions of the summer months in which more extensive repair work is performed on the school buses. Although the Appellant clearly testified that he only takes the required twenty-one non-calendar days off for three weeks in the summer, the administrative law judge stated in findings of fact that the Appellant was off work in June and July.[3]

The Appellant filed a petition of appeal in the Circuit Court of Kanawha County on July 28, 2000, and that court affirmed the order of the administrative law judge on May 5, 2003. It is from that order that the Appellant appeals to this Court. The Appellant asserts that the administrative law judge and lower court erred in holding that he does not perform like assignments and duties compared to the other mechanics for purposes of uniformity and anti-discrimination statutes.

## II. Standard of Review

■■■ The standard of review for Grievance Board determinations has been explained as follows in syllabus point one of *Cahill v. Mercer County Board of Education*, 208 W.Va. 177, 539 S.E.2d 437 (2000):

Grievance rulings involve a combination of both deferential and plenary review. Since a reviewing court is obligated to give deference to factual findings rendered by an administrative law judge, a circuit court is not permitted to substitute its judgment for that of the hearing examiner with regard to factual determinations. Credibility determinations made by an administrative law judge are similarly entitled to deference. Plenary review is conducted as to the conclusions of law and application of law to the facts, which are reviewed de novo.

*See also Martin v. Randolph County Bd. of Educ.*, 195 W.Va. 297, 304, 465 S.E.2d 399, 406 (1995) (holding that "[w]e must uphold any of the ALJ's factual findings that are supported by substantial evidence, and we owe substantial deference to inferences drawn from these facts"). In syllabus point one of *Randolph County Board of Education v. Scalia*, 182 W.Va. 289, 387 S.E.2d 524 (1989), this Court explained: "A final order of the hearing examiner for the West Virginia Educational Employees Grievance Board, made pursuant to W.Va.Code, 18–29–1, *et seq.* (1985), and based upon findings of fact, should not be reversed unless clearly wrong."

## III. Discussion

### A. Administrative Law Judge and Lower Court Conclusions

■■ In syllabus point one of *Morgan v. Pizzino*, 163 W.Va. 454, 256 S.E.2d 592 (1979), this Court stated that "[s]chool personnel regulations and laws are to be strictly construed in favor of the employee." The statutes at issue in the present case are unequivocal and have been extensively examined by this Court. As stated above, West Virginia Code § 18A–4–5b commands that uniformity must apply to "all salaries, rates of pay, benefits, increments or compensation for all persons regularly employed and performing like assignments and duties within the county[.]" In a related statute, West Virginia Code § 18–29–2 prohibits discrimination and favoritism with respect to any employee of a board of education and permits recovery for "any discriminatory or otherwise aggrieved application of unwritten poli-

---

**3.** Paragraph four of the administrative law judge's findings of fact provides as follows:

"Grievant Durig does not work during June and July."

cies or practices of the board" and "any specifically identified incident of harassment or favoritism." W.Va.Code § 18–29–2(a). To establish a prima facie case of discrimination or favoritism under West Virginia Code §§ 18–29–2(m) and (o), a grievant must establish the following:

(a) that he is similarly situated, in a pertinent way, to one or more other employees;

(b) that the other employee(s) have been given advantage or treated with preference in a significant manner not similarly afforded him; and

(c) that the difference in treatment has caused a substantial inequity to him, and that there is no known or apparent justification for this difference.

*Flint v. Board of Educ. of County of Harrison,* 207 W.Va. 251, 256, 531 S.E.2d 76, 81 (1999).

■ In *Flint,* this Court examined the relevant statutes and addressed their impact on the 240–261 day contract controversy, explaining as follows:

Although the BOE acknowledges that plaintiffs Flint and Anderson are similarly situated to Mr. Dawson and Mr. Richards, it claims that it is not required to afford these plaintiffs the same contract terms because W.Va.Code § 18A–4–8 only entitles service personnel to an employment term of 200 days. The BOE argues that because the statute empowers, but does not require, the BOE to contract with "all or part of these personnel for a longer term," it does not require uniformity in the length of service employees' contracts. We disagree.

*Id.* at 257, 531 S.E.2d at 82. This Court has consistently held that "[c]ounty boards of education have substantial discretion in matters relating to the hiring, assignment, transfer, and promotion of school personnel. Nevertheless, this discretion must be exercised reasonably, in the best interests of the schools, and in a manner which is not arbitrary and capricious." Syl. Pt. 3, *Dillon v. Board of Educ. of County of Wyoming,* 177 W.Va. 145, 351 S.E.2d 58 (1986). In *Flint,* this Court concluded that such discretion

must be exercised in accordance with statutory requirements of uniformity, finding that "while it is clear that the BOE had the authority in the early 1980s to replace vacant 261–day positions with 240–day contracts, it could not disregard the uniformity requirement of W.Va.Code § 18A–4–5b." 207 W.Va. at 257, 531 S.E.2d at 82. The *Flint* Court consequently held that the 240–day contract employees were "entitled to compensation under 261–day contracts." *Id.*

In *Weimer–Godwin v. Board of Educ. of Upshur County,* 179 W.Va. 423, 369 S.E.2d 726 (1988), this Court examined the degree to which jobs duties and responsibilities must be comparable in order to warrant identical benefits under the uniformity statute. *Id.* at 427, 369 S.E.2d at 730. This Court reasoned that "once a county board of education pays additional compensation to certain teachers, it must pay the same amount of additional compensation to other teachers performing 'like assignments and duties[.]'" *Id.,* 369 S.E.2d at 730. The Court specified that duties of the compared personnel do not have to be identical. "This is not the test." *Id.,* 369 S.E.2d at 730. The Court found that substantial similarity was sufficient to invoke the statutory protections of uniformity. *Id.* at 428, 369 S.E.2d at 731. In his dissent to *Flint,* Justice McGraw accentuated the importance of adopting a "liberal measure of comparison to determine whether employees are similarly situated for purposes of § 18A–4–5b," emphasizing that the *Flint* decision could permit the uniformity statute to "become a nullity" if county boards of education attempted to escape the uniformity requirement by "expanding the number of employees subject to multiclassification." 207 W.Va. at 258, 531 S.E.2d at 83.

■ In *Board of Education of County of Wood v. Airhart,* 212 W.Va. 175, 569 S.E.2d 422 (2002), school board employees initiated a grievance based upon lack of uniformity in a 240–day/261–day controversy. The *Airhart* appellants, having been employed under 240–day annual contracts, had presented testimony regarding their performance of the same duties and responsibilities as various other employees working under 261–day annual contracts. In finding that the appellants

were entitled to 261–day contracts, this Court held as follows in syllabus point five:

Where county board of education employees perform substantially similar work under 261–day and 240–day contracts, and vacation days provided to 261–day employees reduce their annual number of work days to level at or near the 240–day employees, principles of uniformity demand that the similarly situated employees receive similar benefits.

212 W.Va. at 177, 569 S.E.2d at 424.

■ In the case sub judice, the Appellant presented evidence regarding the duties he shared with Mr. Titus and Mr. Greathouse. The evidence indicated that the Appellant performed duties substantially similar or essentially identical to the duties performed by the 261–day employees. Based upon our review of the evidence presented, we find that the administrative law judge was clearly wrong in finding that the Appellant did not work in the months of June and July. The Appellant testified that he was only off from work during three weeks in June and/or July, based upon the requirement that the Appellant take twenty-one non-paid days per year. The administrative law judge's conclusion that the Appellant performed fewer responsibilities than the other two mechanics was based upon the clearly erroneous factual statement that he did not work during the months of June or July. We therefore reverse the decision of the administrative law judge and remand this matter for entry of an order entitling the Appellant to a 261–day contract.

### B. Waiver Issue

■ In *Airhart*, this Court clarified that employees would not be considered to have waived their right to a 261–day contract because they signed a 240–day contract. The Court explained:

The BOE's contention that the Appellants waived their right to the benefits of a 261–day contract by applying for and accepting a 240–day contract is without merit. When the Appellants bid on the 240–day positions, they did not have the option of insisting on a 261–day contract or the benefits provided to a 261–contract em-

ployee, and they did not intentionally forego the opportunity for paid vacation. No waiver can be implied from this situation, and we decline to establish a principle that acceptance of a position serves as a waiver of one's statutory rights to uniformity with fellow employees.

212 W.Va. at 181, 569 S.E.2d at 428 (footnote omitted). The uniformity violations, as well as the discriminatory practices, are continuing statutory violations, and the filing of a grievance concerning these alleged violations will not be dismissed simply because the individual questioning the uniformity and discrimination issues had accepted a 240–day contract and had begun working under such contract. As explained in *Airhart*, the "concept of an actual waiver of one's established rights implies a voluntary act." 212 W.Va. at 182, 569 S.E.2d at 429; *see also Smith v. Bell*, 129 W.Va. 749, 760, 41 S.E.2d 695, 700 (1947) (explaining that "[a] waiver is a voluntary act, and implies an election by the party to give up something of value, or to forego some advantage which he might, at his option, have insisted on and demanded"). We consequently hold that the Appellant did not waive his rights to seek enforcement of the uniformity and discrimination statutes by signing the 240–day contract.

### C. Back Pay

■ In *Airhart*, this Court held as follows: "While the Appellants' initial acceptance of the 240–day contract did not preclude them from later filing a grievance based upon the absence of uniformity, we find that their acceptance of the 240–day contract and performance of duties thereunder renders back pay inappropriate." 212 W.Va. at 182, 569 S.E.2d at 429. The *Airhart* Court further stated: "We are not persuaded that in all these circumstances this discrimination represented an intentional effort by the Board to deprive these employees of appropriate compensation and benefits." *Id.*, 569 S.E.2d at 429. Likewise, in the present case, while we hold that the Appellant is entitled to a 261–day contract based upon the similarity of duties performed between the 240 and 261–day contracts, we find that an award of back pay is unwarranted.

**250**

### III. Conclusion

Based upon the foregoing discussion, the final order of the Circuit Court of Kanawha County is reversed, and this case is remanded for entry of an order mandating an alteration in the Appellant's contract from a 240–day annual contract to a 261–day annual contract, based upon the requirements of West Virginia Code §. 18A–4–5b and West Virginia Code § 18–29–2(m).

Reversed and Remanded.

Justice McGRAW concurs and reserves the right to file a concurring opinion.

McGRAW, Justice, concurring.

I concur with the majority in this case, as I believe the record is replete with evidence that the Appellant performed essentially identical duties as the two 261–day contract employees and, accordingly, is entitled to a 261–day contract and the benefits associated therewith. I depart from the majority only to the extent that, in my view, the Appellant should have also been awarded back pay.

Based upon the above, I respectfully concur.