605 S.E.2d 814

**The BOARD OF EDUCATION OF THE COUNTY OF TYLER, Petitioner Below, Appellee**

v.

**Marian R. WHITE, Respondent Below, Appellant**

No. 31717.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 15, 2004.

Decided Oct. 28, 2004.

Frederick M. Dean Rohrig, Esq., Prosecuting Attorney of Tyler County, Middlebourne, West Virginia, Kathy Finsley, Esq., Wheeling, West Virginia, Attorneys for Board of Education of the County of Tyler.

John Everett Roush, Esq., West Virginia School Services Personnel Assoc., Charleston, West Virginia, Attorney for Marian R. White.

MAYNARD, Chief Justice:

Marian White, Appellant, appeals the July 23, 2003, order of the Circuit Court of Tyler County that reversed a December 19, 2000, decision of the West Virginia Education and State Employees Grievance Board and ruled that Ms. White, an employee of the Tyler County Board of Education, Appellee, was

not unlawfully discriminated against in her terms of employment with the Board of Education. After careful consideration of the issue raised herein, we reverse the circuit court's order and remand with directions to reinstate the Grievance Board's decision.

## I.

### FACTS

Ms. White was employed by the Tyler County Board of Education (hereafter "the BOE") on March 20, 1997. Since that time she has been classified as an executive secretary and has worked under a 240–day contract. Employees with a 240–day contract do not receive a paid vacation, but receive 21 days off without pay each year. In contrast, employees with a 261–day contract are provided a paid vacation of up to 24 days per year, based on years of service.[1]

In February 1999, Ms. White initiated a grievance in which she sought an addition of 21 days to her contractual employment term. She based her grievance on the uniformity provisions of W.Va.Code § 18A–4–5b (1990), and the prohibition against discrimination and favoritism in W.Va.Code §§ 18–29–2(m) and (o) (1992). Specifically, she alleged that similarly situated employees worked under 261–day contracts. The grievance ultimately proceeded to the West Virginia Education and State Employees Grievance Board (hereafter "Grievance Board" or "Board"). By decision dated December 19, 2000, the Grievance Board granted relief to Ms. White. The Board found:

Grievant White has established that she performed assignments and duties like those performed by [Barbara] Smith [who, prior to her retirement in 1999, served as Executive Secretary to the Assistant Superintendent and Transportation Director][2] as contemplated by the uniformity provision of *W.Va.Code* § 18A–4–5b.

Grievant has further demonstrated that she was similarly situated to Ms. Smith, and has received disparate, less favorable, treatment because she has a shorter employment term, and thereby receives no vacation benefits enjoyed by Ms. Smith and other 261–day employees. TCBOE explains that the position now held by Grievant was posted with a shorter employment term as an effort to cope with declining resources. Accepting that boards of education are facing declining resources, TCBOE has offered no nondiscriminatory reason for the difference in treatment; therefore, Grievant White prevails on the claims of discrimination and favoritism.

(Footnote added). Accordingly, the Board ruled that Ms. White was entitled to a 261–day employment term, effective February 2, 1998, with back pay, interest, and all other benefits to which she would be entitled.

The BOE thereafter appealed the Grievance Board's decision to the Circuit Court of Tyler County. By order of July 23, 2003, the circuit court reversed the decision of the Grievance Board. The circuit court left undisturbed the finding of the Grievance Board that the BOE discriminated against Ms. White. The circuit court found, however, that,

[the BOE] did show by a preponderance of the evidence that it had a legitimate, nondiscriminatory reason to substantiate its actions.

[Ms. White] offered no evidence to show that the reasons given by the [BOE] were pretextual. [Ms. White] made no effort to rebut the [BOE's] contentions even through cross-examination.

\* \* \* \* \* \*

There may be times when shortage of funds may not be sufficient reason for

---

1. The Grievance Board found below that due to shrinking financial resources, the Tyler County Board of Education reduced all 261–day contracts to 256 days effective July 1, 2000. This change did not affect the employees' vacation benefits.

2. In its appeal from the Grievance Board decision to the circuit court, the BOE argued that

Ms. Smith should not have been used as a comparison in Ms. White's uniformity analysis because Ms. Smith was retired and no longer met the definition of "regular full-time employee" for purposes of W.Va.Code § 18A–4–5b. This issue was not specifically addressed in the circuit court's order and it is not before this Court.

discrimination. The employee by effective cross-examination may be able to show that the reason was, in fact, pretextual. However, in this case, no effort was made by the employee to show that the reason given by the [BOE] was pretextual.

\*    \*    \*    \*    \*    \*

The Hearing Examiner made the following comment to counsel for the [BOE] as counsel was attempting to justify the reason for discrimination:

"Ms. Finsley, I understand that the [BOE] has been suffering from revenue concerns. I don't think there's any dispute about that. *But this Grievance really involves the uniformity and discrimination issues.*" Transcript, Level II p. 78.

It is obvious that the Hearing Examiner was excluding an essential element of proving a discrimination case.

(Footnote omitted.). Ms. White now appeals the circuit court's order to this Court.

## II.

## STANDARD OF REVIEW

The applicable standard of review of Grievance Board decisions is set forth in Syllabus Point 1 of *Cahill v. Mercer County Bd. of Educ.*, 208 W.Va. 177, 539 S.E.2d 437 (2000):

Grievance rulings involve a combination of both deferential and plenary review. Since a reviewing court is obligated to give deference to factual findings rendered by an administrative law judge, a circuit court is not permitted to substitute its judgment for that of the hearing examiner with regard to factual determinations. Credibility determinations made by an administrative law judge are similarly entitled to deference. Plenary review is conducted as to the conclusions of law and application of

law to the facts, which are reviewed de novo.

Further, "[a] final order of the hearing examiner for the West Virginia Educational Employees Grievance Board, made pursuant to W.Va.Code, 18–29–1, *et seq.* (1985), and based upon findings of fact, should not be reversed unless clearly wrong." Syllabus Point 1, *Randolph County Bd. of Educ. v. Scalia*, 182 W.Va. 289, 387 S.E.2d 524 (1989). This Court reviews decisions of the circuit court under the same standard used by the circuit court to review Grievance Board decisions. *See Martin v. Randolph County Bd. of Educ.*, 195 W.Va. 297, 465 S.E.2d 399 (1995). Because the instant case concerns a disagreement between the Grievance Board and the circuit court concerning the applicable law, we will conduct a *de novo* review.

## III.

## DISCUSSION

The sole issue presented by Ms. White is whether the circuit court erred in ruling that financial difficulties constitute a nondiscriminatory, non-pretextual reason for the fact that she was treated differently from similarly situated employees with 261–day terms of employment. Ms. White essentially argues that the BOE's stated reason for her different treatment is pre-textual or untrue. The BOE responds that Ms. White offers nothing to refute its evidence that it was financial difficulties that resulted in Ms. White's 240–day rather than 261–day contract.

We find that the circuit court erred as a matter of law in ruling that once a grievant establishes a *prima facie* case of lack of uniformity, discrimination and favoritism under W.Va.Code § 18A–4–5b and W.Va.Code §§ 18–29–2(m) and (o), the employer may then escape liability by offering a legitimate reason to justify its different treatment of the grievant.[3] Specifically, the circuit court

---

**3.** The Grievance Board and both parties herein make the same misstatement of the law. The Board and the parties cite in support of their assertion that an employer can offer a legitimate reason to rebut a *prima facie* case of discrimination under W.Va.Code §§ 18–29–2(m) and (o), several Grievance Board decisions, this Court's opinion in *Frank's Shoe Store v. Human Rights Com'n*, 179 W.Va. 53, 365 S.E.2d 251 (1986),

and the United States Supreme Court decision in *Texas Dep't. of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Significantly, however, *Franks Shoe Store* involved a Human Rights Act claim for pregnancy/gender discrimination and *Burdine* involved a gender discrimination claim under federal Title VII. For the reasons stated *infra*, the law in

found that the BOE showed "by a preponderance of the evidence that it had a legitimate, nondiscriminatory reason to substantiate its actions" and Ms. White "offered no evidence to show that the reasons given by the [the BOE] were pretextual." For the reasons set forth below, we conclude that the circuit court improperly applied the law applicable to discrimination claims under the State's Human Rights Act to Ms. White's discrimination and favoritism claims brought under W.Va.Code §§ 18–29–2(m) and (o).

■ There are critical differences between discrimination claims under the education statutes and discrimination claims brought under the Human Rights Act which preclude the application of the same legal analysis to both types of claims. The policy underlying the Human Rights Act is to prevent the denial of equal treatment based on race, religion, color, national origin, ancestry, sex, age, blindness, disability or familial status. *See* W.Va.Code § 5–11–2 (1998). This Court has recognized that,

> In any employment case under the West Virginia Human Rights Act, we believe that the question to be decided is not whether an employment decision was fair or made in accordance with pre-established procedures. The question is whether the individual was discriminated against because of race, religion, color, national origin, ancestry, sex, age, blindness, or handicap. ... [N]o general public policy against harassment in the workplace is created by the West Virginia Human Rights Act for purposes of West Virginia wrongful discharge law.

*Travis v. Alcon Laboratories, Inc.,* 202 W.Va. 369, 383, 504 S.E.2d 419, 433 (1998). In other words, the crux of a Human Rights Act discrimination claim is not simply that the plaintiff was discriminated against or treated differently; rather, it is that the discrimination was motivated by one of the impermissible factors stated in the Act. In a claim brought under the Human Rights Act, it is

*Franks and Burdine* is not applicable to discrimination claims under W.Va.Code § 18–29–2(m).

**4.** In *Vest* this Court held that an action filed under the State Human Rights Act is not pre-

not sufficient for the plaintiff to show that he or she was discriminated against. Instead, the plaintiff must show that the basis of the discrimination is illegal under the Human Rights Act. Thus, the employer's motive for the discriminatory conduct is decisive. For this reason, under the Human Rights Act,

> If the complainant is successful in creating this rebuttable presumption of discrimination, the burden then shifts to the respondent to offer some legitimate and *nondiscriminatory* reason for the [discrimination]. Should the respondent succeed in rebutting the presumption of discrimination, then the complainant has the opportunity to prove by a preponderance of the evidence that the reasons offered by the respondent were merely a pretext for the unlawful discrimination.

*Shepherdstown V.F.D. v. W.Va. Human Rights,* 172 W.Va. 627, 637, 309 S.E.2d 342, 352 (1983) (emphasis added).

■ In contrast, the policy underlying uniformity and discrimination claims under the education statutes is to prevent discrimination against similarly situated education employees regardless of the basis for discrimination. The crux of such claims is that the complainant was treated differently than similarly situated employees, *not* that the discrimination was motivated by an impermissible factor. In *Vest v. Bd. of Educ. of Cty. of Nicholas,* 193 W.Va. 222, 226, 455 S.E.2d 781, 785 (1995), this Court recognized that the issues involved in a claim under W.Va.Code § 18–29–2 and the Human Rights Act are not identical.[4] We explained,

> a "discrimination" claim under W.Va.Code, 18–29–2(m), only need establish that the adverse employment decision was neither job related nor agreed to by the employees. Section 2(m) imposes no requirement for proving that the "discrimination" was caused by an illicit motive or was the result of discriminatory policy having a disparate impact, as would be the case under the Human Rights Act.

cluded by a prior grievance decided by the Education and State Employees Grievance Board arising out of the same facts and circumstances.

*Id.* (footnote omitted). Obviously, since a grievant under W.Va.Code § 18–29–2 does not have to show that he or she was discriminated against due to an illicit motive, the grievant's employers cannot escape liability by showing that the reason for the discrimination was "nondiscriminatory" or "legitimate."

According to the uniformity requirement found in W.Va.Code § 18A–4–5b (1990), "uniformity shall apply to all salaries, rates of pay, benefits, increments or compensation for all persons regularly employed and performing like assignments and duties within the county[.]" The provisions of W.Va.Code § 18–29–2 permit employees of county boards of education, among others, to file a grievance alleging "any discriminatory or otherwise aggrieved application of unwritten policies or practices of the board; [and] any specifically identified incident of harassment or favoritism." "Discrimination" is defined in W.Va.Code § 18–29–2(m) as "any differences in the treatment of employees unless such differences are related to the actual job responsibilities of the employees or agreed to in writing by the employees." "Favoritism" is defined in W.Va.Code § 18–29–2(o), as "unfair treatment of an employee as demonstrated by preferential, exceptional or advantageous treatment of another or other employees."

▅▅▅ This Court previously has dealt with the uniformity, discrimination, and favoritism provisions governing education employees. Concerning uniformity, in Syllabus Point 1 of *Weimer–Godwin v. Board of Educ. of Co. of Upshur,* 179 W.Va. 423, 369 S.E.2d 726(1988), we held that "[u]nder *W. Va.Code,* 18A–4–5 [1969] and its successor, *W.Va.Code,* 18A–4–5a [1984],[5] once a county board of education pays additional compensation to certain teachers, it must pay the same amount of additional compensation to other teachers performing 'like assignments and

duties[.]' " Also, of specific relevance to this case is our holding in Syllabus Point 5 of *Board of Educ. of County of Wood v. Airhart,* 212 W.Va. 175, 569 S.E.2d 422 (2002) where we held:

> Where county board of education employees perform substantially similar work under 261–day and 240–day contracts, and vacation days provided to 261–day employees reduce their annual number of work days to level at or near the 240–day employees, principles of uniformity demand that the similarly situated employees receive similar benefits.

In regard to the issues of discrimination and favoritism, we opined in *Flint v. Bd. of Educ. of County of Harrison,* 207 W.Va. 251, 256, 531 S.E.2d 76, 81 (1999) (per curiam),[6] that,

> In order to establish a *prima facie* case of discrimination or favoritism under W.Va. Code §§ 18–29–2(m) and (o), a grievant must establish the following:
>
> (a) that he [or she] is similarly situated, in a pertinent way, to one or more other employees;
>
> (b) that the other employee(s) have been given advantage or treated with preference in a significant manner not similarly afforded him; and
>
> (c) that the difference in treatment has caused a substantial inequity to him, and that there is no known or apparent justification for this difference.

(Citation omitted.). For the following reasons, we now reject this analysis.

This Court in *Flint* cited *Martin v. Randolph County Bd. of Educ.,* 195 W.Va. 297, 308, 465 S.E.2d 399, 410 (1995) in support of the above-stated legal test. This is problematic because in *Martin* the grievant alleged discrimination in compensation based on gen-

---

**5.** Although this syllabus point cites to W.Va.Code § 18A–4–5a and Ms. White's uniformity claim was brought under W.Va.Code § 18–4–5b, both statutes require uniformity. Specifically, W.Va. Code § 18A–4–5a (1990) requires salary schedules, additional salary increments and compensation, and benefits provided by county boards of education to be uniform throughout the county as to the classification of training, experience,

responsibility and other requirements or to those teachers performing like assignments and duties.

**6.** This language is also found in *Board of Educ. of County of Wood v. Airhart, supra,* and *Durig v. Board of Educ. of County of Wetzel,* 215 W.Va. 244, 599 S.E.2d 667 (2004).

der. According to Syllabus Point 3 of *Martin*,

A plaintiff can establish a *prima facie* case of intentional salary discrimination if she proves that she is a member of a protected class and that she receives a lower salary than an individual who is not a member of the plaintiff's class and who is similarly situated to the plaintiff in terms of experience and the comparability of job content. The employer may rebut the inference by coming forward with some legitimate explanation for the salary discrepancy.

As we have already explained above, however, critical differences between discrimination claims under W.Va.Code § 18–29–2 and claims alleging discrimination based on an impermissible factor preclude application of the same legal test to both types of claims.

■ In addition, the language in *Flint* is inconsistent with the clear provisions of W.Va.Code § 18–29–2. First, according to W.Va.Code § 18–29–2, "*any* differences in the treatment of employees" is prohibited, not just "significant" discrimination as stated in *Flint*. Further, the statute does not mandate that to be actionable, the discrimination must cause "a substantial inequity" to the grievant as the *Flint* test requires. Finally, once the grievant proves that he or she has been treated differently, the different treatment is not related to actual job responsibilities of the employees, and the grievant has not agreed to the different treatment in writing, the grievant has established his or her discrimination claim. Significantly, the stat-

ute does not provide, as set forth in *Flint*, that the employer can present a legally recognized justification for the discrimination. We previously have held that "[a] statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect." Syllabus Point 2, *State v. Epperly*, 135 W.Va. 877, 65 S.E.2d 488 (1951). The provisions of W.Va. Code § 18–29–2(m) are unambiguous and should be applied and not construed.

■ Accordingly, we now hold that to prevail in a claim for discrimination under W.Va. Code § 18–29–2(m), an employee must show that he or she has been treated differently from other employees and that the different treatment is not related to the actual job responsibilities of the employees and not agreed to in writing by the employee.[7] Once a claim is established, an employer cannot escape liability by asserting a justification, such as financial necessity, for the discriminatory treatment. To the extent our prior cases are inconsistent with this holding, they are expressly overruled.

■ We now apply the above law to the facts before us. The Grievance Board found that Ms. White prevailed on her lack of uniformity, discrimination, and favoritism claims. The circuit court did not interfere with these findings, and they are not challenged by the BOE on appeal to this Court.[8] The circuit court erred, however, when it improperly found that the BOE established a legitimate, nondiscriminatory reason for its

---

7. We note that simply because a plaintiff signed a 240–day contract does not mean that he or she "agreed" to conduct now complained of and therefore cannot recover. The uniformity violations and discriminatory practices are continuing violations and we previously have determined that a grievance alleging these violations will not be dismissed simply because the grievant originally had accepted and begun working under a 240–day contract. *See Durig v. Board of Educ. of County of Wetzel, supra,* and *Board of Educ. of County of Wood v. Airhart, supra.*

8. In its brief to this Court, the BOE responds to arguments made by Ms. White in her brief and reiterates that although Ms. White "and Mrs. Smith held the same title of Executive Secretary[,] their duties and assignments differed substantially as reflected in the record below."

Elsewhere, the BOE asserts that "the record was replete with examples of the substantial differences in [the] ... assignments and duties [of Ms. White and Mrs. Smith]. In fact, Mrs. Smith assumed receptionist duties while [Ms. White] had assignments and duties taken away." *Citing* Level Four Transcript, pages 11–12, 69–70. However, the BOE did not cross assign as error the findings that the BOE discriminated against Ms. White as required by West Virginia Rule of Appellate Procedure 10(f). "The purpose of requiring a specific cross-assignment of error is to alert the appellant to the issue to enable a response to be made in the appellant's reply brief." *Bettinger v. Bettinger,* 183 W.Va. 528, 533, 396 S.E.2d 709, 714 (1990). Accordingly, we do not review the finding of discrimination below.

conduct. Accordingly, because Ms. White prevailed on her claims, the Grievance Board properly granted her relief.

Finally, concerning the relief granted by the Board, we note that the Board found as a finding of fact that "[d]ue to shrinking financial resources, [the BOE] reduced all 261–day contracts to 256 days, effective July 1, 2000. This amendment did not affect the employees' vacation benefit." Nevertheless, in its December 19, 2000, order, handed down more than five months after the reduction of *all* 261–day contracts, the Grievance Board ordered the BOE to instate Ms. White to a 261–day employment contract, effective February 2, 1998, back pay, with interest, and all other benefits to which she would be entitled. We believe, based on the fact that all 261–day contracts had been reduced to 256 days by the time of the Grievance Board's order, the Board should have ordered the BOE to instate Ms. White to a 261–day contract effective February 2, 1998 to July 1, 2000, at which time Ms. White's 261–day contract would be reduced to 256 days along with all of the other 261–day contracts.

## IV.

### CONCLUSION

Accordingly, for the reasons set forth above, we reverse the July 23, 2003, order of the Circuit Court of Tyler County and remand with directions to reinstate the December 19, 2000, decision of the West Virginia Education and State Employees Grievance Board, except that the Tyler County Board of Education shall be ordered to instate Ms. White to a 261–day contract, effective February 2, 1998 [9] to July 1, 2000, and a 256–day contract thereafter, back pay, with interest, and all other benefits to which she would be entitled.

Reversed and Remanded with Directions.

9. On appeal from the Grievance Board decision to the circuit court, the BOE challenged the award of back pay, with interest, to Ms. White, effective February 2, 1998. Specifically, the BOE pointed to this Court's decision in *Board of Educ. of Wood Co. v. Airhart, supra,* issued after the Grievance Board's decision, in which we found that an award of back pay was inappropriate because the grievants' acceptance of 240–day contracts indicated a general satisfaction with the offered terms of employment. Accordingly, we limited back pay to the initial favorable decision of the Administrative Law Judge at the Level IV proceeding. *See also Durig v. Board of Educ. of Co. of Wetzel, supra,* (applying Court's reasoning in *Airhart* to find award of back pay unwarranted where appellant therein was granted a 261–day contract based upon similarity of duties performed between the 240 and 261–day contracts). The circuit court did not address this issue in its July 23, 2003, order. In its brief to

this Court, the BOE in cursory fashion, cites *Airhart* to refute Ms. White's assertion that the relief awarded by the Grievance Board was appropriate.

We decline to disturb the relief awarded to Ms. White by the Grievance Board. The award is consistent with our decision in *Flint, supra,* in which we ruled that the grievants' awards of back pay should be limited to the difference in compensation between a 240–day contract for the one year prior to the filing of this grievance and for the years thereafter while the cases were pending. *Flint* is based on W.Va.Code § 18–29–3(v) (1992), which provides that "[t]he doctrine of laches shall not be applied to prevent a grievant or grievants from recovering back pay or other appropriate relief for a period of one year prior to the filing of a grievance based upon a continuing practice." Also, *Airhart* was decided after the Grievance Board granted back pay to Ms. White.